May it please the Court. I'm Terry Coleman. I represent Mr. Doug Powell. The district court erred when it accepted as a reasonable exercise of Hartford's discretion its stated practice of always utilizing a 12-month averaging with respect to the consideration of bonus income in pre-disability earnings. Hartford did not have discretion to alter the method that the employer established within the plan. The plan itself made clear that a uniform 12-month averaging is not to be utilized. To the contrary, the plan specifically says when a 12-month averaging is to be utilized, the 12-month averaging process applies. The plan specifically says you utilize a 12-month average process when you're considering the commissions for commissioned salespersons. In contrast, for individuals such as Mr. Powell, who is not a commissioned salesperson, the plan says to do something different. It leaves it out. Pardon? It leaves it out. It leaves out the statement. It does. Our reading of that is that that means something. The plan established by the employer specifically says when to use a 12-month average. In contrast, Hartford announced its practice, its uniform practice of doing differently, of doing just the opposite, of always utilizing a 12-month average, unless the plan says otherwise. That flips, that flips the process that the employer established. And so in Hartford's analysis, they did not have to exercise discretion. They did not have to sit down and come up with what the proper calculation was for Mr. Powell's rate of pay, in effect, just before he went out on disability, because all it had to do was to take everything and divide by 12. In the plan, it says the monthly rate of basic earnings. That's what you have to decide. Yes. And the monthly rate of basic earnings is the rate, in effect, on the last day. And your argument is on the last day he was being paid this bonus, and that therefore, under the absence of language that's in the commission people, that they were wrong in their result. Yes. That is absolutely correct. They're wrong in the result, and they're wrong in the methodology. Now Mr. Coleman. Yes. Voice from over here. I'm sorry. I'm a long way away in Florida. I can hear you. I understand your argument on rate, in effect. My question is, wasn't there only an expectation of a rate, in effect? I've looked at the bonus language, and it states that the employer has the right to modify or cancel the key contributor bonus plan at any time. And so how was it a rate, in effect, if it was an expectation? Yes. Thank you. I would agree that the bonus plan that was in place reserved the ability of the employer to provide it or to not provide it. That's just like a salary. An employer So you're saying a bonus is like a salary. Yes, it is in that respect. Absolutely. As I understand your Honor's question I always thought a bonus was different from a salary because it was discretionary. And a salary is not discretionary. Well, no. At least my understanding is different. We're talking about a software company in the 90s. Let's say it got in trouble in June. And the bonus day came and said, look, I'm sorry, but we're in trouble. We can't give you that bonus. They would have the right to do that, wouldn't they? Absolutely. And in that instance, that unexpected bonus amount would not be included in the calculation. It was unexpected. But we don't know that on May the 12th. We don't know that on May the 12th. On May the 12th it's still an expectation, isn't it? Well, yes. It is still an expectation. That is correct. It was received. And there have been many, many cases where bonus income is received after an employee is out on disability. That is indistinguishable from this assert circumstance. We are just calculating out what the proper amount is, what the proper rate is. We're trying to understand the plan. We look at it and we say, okay, it includes bonuses. But it doesn't count commissions, overtime pay and so forth. Then it talks about your monthly rate of basic earnings will be the rate in effect on your last day as an active full-time employee. And I would imagine many employees on their last full-time day, their rate is much lower than it has been before because they were healthy and getting bonuses before. Then they got sick and they were out a lot and they weren't getting the bonuses. So is there a conflict there? No, there is not a conflict there. If an employee's disability starts, well, that is an issue with respect to when does a disability start. Has the employee reduced their time sufficiently or their productivity in order to establish that rate? But the problem is, is that we can pick out examples where if we take a look at what the rate is right before the disability started, there might be instances where that just doesn't seem right. The example that Your Honor just posited. On the flip side, there's another example where that wouldn't just seem right. That is, if Mr. Powell's only bonus was the single semiannual bonus that he received right before he goes out on disability, and we know that that is a semiannual bonus, and yet... And he's, it's no longer an expectation. He has received that bonus and it's in his paycheck. And yet under the insurance company's stated policy, stated practice, they would take that bonus and just divide it by 12. They would not. And that's as good as it is. Let's say, let's say, let's say you're correct. That's just not the facts of this case. He hadn't received the bonus yet, had he? That, well, no. He had not received that bonus, and Hartford has agreed that they include those bonuses. And the Stefan case from the Ninth Circuit says those bonuses are to be included even though they're received afterwards.   Right. Right. Right. Right. Right. Right. Right. Right. Of course, there are many bonuses that would be because two weeks from, you would get a bonus for what you're doing now, and you might not get that bonus until two weeks later. Absolutely. And that's what Mr. Powell received, because he did not work through that entire time period of the six-month bonus plan, but he was entitled. He was entitled. That was, in effect, that plan. And if the, if the company was going to, to maintain that bonus plan, he was entitled to it. That was, in effect, for him. But the problem with Hartford's position is they didn't exercise that discretion. They didn't go through the process of trying to figure out what the applicable rate, in effect, is for Mr. Powell because it instituted on this overlay a one-size-fits-all analysis, a one-size-fits-all practice that removed their ability to exercise their discretion in assessing the applicable rate of pay for him. Well, you're saying that their discretion means they have to look at each case one at a time. Frankly, from the perspective of an insurance company, I'm not surprised for efficiency reasons. They want to have a single rule that can always apply. Sometimes it cuts in their favor. Sometimes it cuts against. But if the policy of the plan itself doesn't spell out something, the alternative, and I don't think it does. I mean, let me start with that. Does the plan itself explicitly state that bonuses should be allocated based on the company's announced time period for the bonus? Yes. Where? Because it's embedded within the definition. The answer where is an answer with because. It's answered with ER page something or other. In comparing ER 146 and ER 137. Okay. That argument I have, but it's not explicit. It simply doesn't have a provision that's applicable to this employee. So the question becomes, why isn't it an exercise of the plan administrator's discretion to say, hey, it's a nightmare if we have to investigate every single individual bonus and paycheck and so forth to try to figure out what this generalized rate is. Most bonuses are paid on an annual basis. We're just going to treat them as being a pay on an annual basis. So if the plan is set up to wash, why is that an abuse of discretion, given that the documents do give the administrator discretion? Because that is not faithful to the plan as set up by the employer. That's why. It isn't. Because if you do compare the definition for the commission salespersons in contrast to the definition for everyone else, like Mr. Powell, that analysis doesn't work. It's based on transaction by transaction. They're not being paid for a time period, but because they're on commission, you have to try to approximate what their income flow would be. Your client's not being paid commission by commission. He's being paid on a periodic basis. And so I can understand why this special provision for a commissioned employee wouldn't be applicable to somebody else. But that doesn't mean that you can infer from the fact that he's not a commissioned employee that the plan explicitly provides a given system has to be used. I disagree, Your Honor, plainly because every contract that I read, and I read a lot of them, says with respect to interpreting, what is intended? That if we explicitly set up something in one area and we do not set that up in another area, then an analysis is that means something. That means that that process that we had over here, we're not applying over here. Well, if the two are alike, that might be so. But if the two are not alike, I'm not sure you can draw the inference that what's over here has to be different from what's over there. Well, then we come down to this is a given. A rate is not an average. It isn't. My rate of my average speed on the way over here. Then if on his last day of work he doesn't receive a bonus, why should bonus be worked in at all? Because his rate on the last day didn't have anything for a bonus. But he received it in connection with the bonus plan that was in effect. But on that day, we did not know the amount, but we knew that he would be, that he was a participant in it, and that is what he received. So that was part of his rate. Mr. Coleman, if there is a tension then between the beginning of the language, which seems to say someone should get bonuses, and the end where it says you should use the rate in effect. If there's tension there, and it has several different ways of looking at it, and some of them are consistent, some of them are inconsistent, what do we do then? Then you make sure that... As in, if it's ambiguous, what do we do? Well, one, you make sure that the insurance company actually exercises their discretion to go through the process. The second is, and this is a problem with respect to the heightened scrutiny analysis, it works in many, many cases. But our courts have not advised the district courts as to how they are supposed to apply heightened scrutiny with respect to contract interpretation. And our position is that the doctrine of contra pro farentum is the gap filler in that circumstance. It is the tiebreaker that the Supreme Court indicated in MetLife v. Glenn. Oh, no. The Supreme Court basically said the fact that there's a self-interested plant administrator doesn't change the standard. Abuse of discretion remains the standard. You apply some as a factor there, but the district court recognized that. It, after saying that, it accepted a stated practice that this is how we do it. This is a uniform practice that is, that was untethered to the language of the policy. Now, the... You're defining discretion as anti-discretion. You just, you gave your answer a moment ago to Judge Black, is that Hartford failed to exercise its discretion. But Hartford did exercise its discretion in adopting a policy which it says they apply uniformly. And you're arguing that the exercise of discretion means they can't do that. That discretion, as you've defined it, means they have to go into each employee's paycheck and figure out for that paycheck for that employee. I'm not sure how I understand that's discretion. They cannot utilize their discretion to adopt a uniform policy when the policy itself says that there is not a uniform policy. We treat one subset of employees this way. We treat another subset of employees this way. Okay. I've already given my time, Your Honor. We've taken you there. Thank you. Good morning, Your Honors. Edith Shea for Defendants and Appellees. The district court's decision in this case should be affirmed. The district court's decision has to be reviewed for clear error under the Kearney and Abadie cases. Clear error? Yes, Your Honor. Well, I mean, this is a case where he's reviewing an administrative record. There is no judgment with regard to credibility or the things that usually go into clear error. Do we see anything any different? Did the district court see anything different than what we have in front of us? I don't think that the district court saw anything different. But under Kearney, this Court remanded a summary judgment motion so that the judgment could be so there could be a bench trial on the record and there could be findings of fact under Rule 52 as opposed to a summary judgment motion. I don't think that it makes much difference in this case in terms of the standard of review, because I think the district court was correct in any case. Well, standard of review very often determines the outcome, so you've sort of opened something up here. I've never seen a contract that we look for clear error. The district judge reads the contract, we read the contract. Clear error is something we ordinarily have in factual determinations. And if a court has said that, I'd sure like to read it, because I don't see how it would apply to the case like this. It does not apply, Your Honor, with respect to the interpretation of the contract. What it would apply to is any findings of fact made by the court under Rule 52. Okay. Do we have any? I didn't hear any factual determination anybody's worrying about here. It's just how we interpret a contract. And getting to that, Your Honor, in terms of how the contract was interpreted here by the district court, the district court applied the correct standard of review with respect to Hartford's decision, which was the abuse of discretion standard of review. It specifically stated that it was weighing Hartford's conflict of interest under Glenn, under the Glenn and Abadi decisions, and then it specifically also stated that it was viewing the decision with enhanced skepticism. After applying that correct analysis, the court determined that Hartford's decision in how it applied the contract here did not constitute an abuse of discretion. And in other words, it applied the standard under Saloma, and it found that Hartford's decision in how it calculated the benefits here was neither illogical nor implausible nor unsupported by the record. The language that we're talking about here is the rate in effect and how Hartford calculated the predisability earnings. Judge Black's question raised a good issue here, which is that in many of these cases, the earnings that an employee would be receiving in the last months of their employment may have very well decreased if an employee was slowing down before actually filing a disability claim. And it may have increased for some reason. Oh, the decision was made that the rate that they receive at the last day. That made it a meat-cutter decision. And then in calculating the rate that's received in the last day, Hartford had the discretion to determine how is that going to be interpreted. Yes, but they don't have wide discretion that they can discuss it outside the language of the contract. No, that's correct, Your Honor. It has to be reasonable, but certainly the contract interpretation, the manner in which the policy provision was interpreted here was reasonable. Yes, Your Honor. Ms. Shea, I think I understand your argument, but tell me about the patent award. Tell me how that fits into your argument. The patent award, the way that that fits into the argument is that this was a way that Hartford's application of applying that award over a 12-month period actually went in Mr. Powell's favor in this case, because the only information that was received regarding the patent award is that it had been awarded for work that Mr. Powell had done while he was employed there. And there was no information that Mr. Powell was able to provide or that the employer provided, except that there had been a patent application two years before in 1993 and that there had been another application in 1995. So this was an award that was being given to him in the year before he went on disability, but it was for work that he had done throughout the course of his employment there. So applying Hartford's interpretation of taking this award and prorating it over 12 months, Mr. Powell got the benefit of that entire award in the year prior to leaving disability. And that's what's going to happen in all of these cases, and that's why there has to be some kind of uniform application across employees, because... There's anything about uniformity is nice, but there's no restriction that you can have something that's not uniform. There's no manta about uniformity, right? No, Your Honor, there's not, but what the Conkright decision and the Steffen decision from this case point out is that it's important in the administration of these plans for policy provisions to be applied fairly and uniformly. Now, that doesn't mean that the result is going to be the same in every particular case. Okay. But you give in, I take it, that it doesn't have to be uniform. They can have contract provisions which are not uniform. Yes, Your Honor. Okay. Now, the argument, which seems to me have some merit that I'd like to have you respond to, is if you just look at the contract. They're talking about the rate paid on the last day. That makes it very easy. How much money did you get on the last day? We talk about then that they were getting some money on the last day, and the decision is made by the contractor that there's going to be a 12-month. But there's nothing, and that's fine, except there's nothing in the contract that says it should be 12-month for this kind of employee. There is one. There is one for another kind of employee. And it strikes me that it's a reasonable way to interpret contracts, that if they make something different, they mean it to be different, and the 12-month is for another kind of employee. It's not in this one. So you can't use it. Now, that makes some sense to me. If they can do it that way, why would they? What's wrong with doing it that way? Well, and, Your Honor, the plan provides Hartford with discretion because there are many ways. They can't be discretioned to change contracts. No. I'm getting away from discretion because I don't think it really fits in this case. Why would they? Why, if it's specific that this kind of employee is to be treated different than the one that has the 12-month written into what they're going to get, and you leave it out of the other one, why wouldn't that mean they're to be treated differently? There isn't any reason to do it by 12 months, because in the contract it shows you some employees get 12 months, some don't. And the key provision that has to be interpreted, then, is the rate in effect. But the rate in effect does not have to mean the money that you received on the last day. As a matter of fact, the Stefan court in this court reversed the administrator's decision when it did not pay the employee bonus of 12 months. It said that he received bonuses that he had not received on the last day, because the employee was to be, was to receive a bonus at the end of the year. After four months he was involved in a major accident, and he never received that year-end bonus. And the administrator in that case said, well, he never received that bonus because he never worked the 12 months. And what the court said was, no, even though he received, the employer decided to pay him that bonus anyway. And what the court said was, that bonus has to be considered, even though it wasn't received until after the disability. So the rate of pay does not mean the money's received on the last day. If it did, then this bonus wouldn't have even ever come into play, because it wasn't received until after he went on disability. So the question is how... And then it says that's the rate in effect on your last day. Right. But it's the rate that's in effect. So the question then is how does one determine the rate that's in effect? The patent bonus was considered as part of the rate that was in effect. The bonuses that he received after he went on disability were considered part of the rate that was in effect. The quarterly bonus that he received for the first quarter of the year, 12 months before he went on disability, was part of what was in the rate that was in effect. It's not to say that there are not different ways. There are so many different ways in which compensation is received by these employees that there are certainly different permutations that can be argued as to how that can be calculated. One of them may be the monies received on that particular day. But the question here, then, is how does the... That's where we go back to the discretion, and that's what the Court's observation was in terms of the interpretations here, that where you have different reasonable interpretations, and the administrator has discretion. But I don't see the reasonable interpretation. If a particular group of employees, it specifically says it's to be on the 12-month basis, and it's left out of the other one, that means they're being treated differently. You're saying that in discretion you can just say one size fits all, even though the language in the contract says one size doesn't fit all. Does an administrator have that kind of discretion? The administrator has the discretion to apply policy terms reasonably, and I think that the commissions employees, it's most of the income for those salespersons would be received by commissions and would be received in transactions. So... How does that fit in with our blankenship case? What the blankenship case said was that when you have cases where an administrator has discretion, the rule of contra preferentum does not apply. Let me see if I understand the facts here. There were multiple bonuses. Some of them, the previous plan I think was quarterly, and there was the patent bonus, and there were... What bonuses were included within the calculation that Hartford made? Covering what span of time? The span of time was from, it was a year from... So they basically took everything that had been paid in a year, some of them on a quarterly plan, some of them one-shot, some of them semi-annual, added that all up and treated that as, divided by 12, and treated that as the monthly amount. Yes, except that I will correct, because for the patent award, they actually went further back than the year, because it was never clear exactly the period that it covered, but it was clear that it was more than a year that it covered. So excluding the patent award, is it correct that they took what was paid to him in the preceding 12 months, added that up and treated that as if it was going to be paid in the 12 months thereafter? Yes. Now, in Blankenship, we construed the term receives as possession through actual receipt of funds. How does that square with what occurred here? Well, here, initially, when Hartford looked at this, it did not include the bonuses that had been received after Mr. Powell went on disability. It therefore, later, Mr. Powell argued that those bonuses should have been included in his rate of pay, and Hartford conceded on that point and included those in his pre-disability earnings. That decision by Hartford ended up being consistent with what the court said in this case, in Steffen, which is that those bonuses after disability should be included as well. Unless there's anything further, Your Honor. Thank you. You're going to save your minute and 19 seconds, huh? Or you'll give it to your colleague. We'll give you one minute for rebuttal. Thank you, Your Honor. At bottom, it is the incongruity between the policy, the stated policy from the insurance company and the language of the plan itself. The two are incompatible. Why should he have an expectation that he would receive more than he actually received in the preceding 12 months? I don't understand the question. Well, I just tried to clarify, and I thought I confirmed with Hartford that what they did was take all the money that had been paid in the preceding 12 months, and then the patent bonus got stuck in there, too, divided by 12 and used that as the monthly rate. What's wrong with that? What's wrong with that is that may or may not yield his applicable rate in effect as of the last day before he goes out on disability. In some instances, it will. In other instances, it won't. And a practice, a one-size-fits-all practice that says, that's how we're going to do it, even though that's inconsistent with the policy, that might make perfect sense for an insurance company that wants administrative ease. It does not make sense. Thank you, Your Honor. Thank you.
judges: Black, Wallace, Clifton